UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
NICHOLAS CASTILLO, ARMANDO HERRERA, and           :
SHERIDDAN VASQUEZ,                                :
                                                                  :
                                    Plaintiffs,    :                    22-cv-6888 (LJL)
                                                                  :
                        -v-                                       :              OPINION AND ORDER
                                                                  :
ROMAN ISAKOV, DAVID ABRAMOV, VISION              :
CELLULAR INC., and ST NICHOLAS MOBILE OF        :
NY INC.,                                         :
                                                                  :
                                    Defendants.    :
                                                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/12/2023_

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Nicholas Castillo ("Castillo"), Armando Herrera ("Herrera"), and Sheriddan

Vasquez ("Vasquez," and together with Castillo and Herrera, "Plaintiffs") filed this action on

August 12, 2022 against Roman Isakov ("Isakov"), David Abramov ("Abramov," and together

with Isakov, the "Individual Defendants"), Vision Cellular Inc. ("Vision Cellular"), and St.

Nicholas Mobile of NY Inc. ("St. Nicholas Mobile" and with Vision Cellular, the "Entity

Defendants," and together with the Individual Defendants, "Defendants"). *See* Dkt. No. 1.

Plaintiffs bring claims under the Fair Labor Standards Act of 1938 ("FLSA"), 28 U.S.C. §§ 201

*et seq.*, and the New York Labor Law ("NYLL"), §§ 190 *et seq.*, seeking damages—including

unpaid wages, unpaid commissions, liquidated damages, pre- and post-judgment interest, wage

statement and wage notice statutory damages—and attorney's fees. *Id.* ¶¶ 1–2. Plaintiff Castillo

also brings claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law

§§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code

§§ 8-101 *et seq*., to recover compensatory and punitive relief for Defendants' unlawful

discrimination and retaliation against him because of his sexual orientation.  *Id.* ¶ 3.

Plaintiffs filed the instant motion for default judgment on March 31, 2023.  Dkt. No. 21.

For the following reasons, that motion is granted in part and denied in part.

## BACKGROUND

The following facts, drawn from Plaintiffs' Complaint, are accepted as true for purposes

of this motion.

Vision Cellular and St. Nicholas Mobile are authorized retailers of Boost Mobile.  Dkt.

No. 1 ¶ 11.  The stores sold cellphones, phone accessories, and cellphone plans.  *Id.* ¶¶ 37, 51.

On or about February 2021, the Individual Defendants purchased the Entity Defendants, and the

Individual Defendants then ran the stores for the period at issue in the Complaint.  *Id.* ¶¶ 16, 30.

The Plaintiffs were hired to sell cellphones, phone accessories, and cellphone plans, and to help

customers with their purchases.  *Id.* ¶¶ 32, 51; Dkt. No. 26, ¶ 6.  Plaintiffs Castillo and Herrera

worked at both locations.  Dkt. No. 1 ¶¶ 29, 48.  Plaintiffs allege on information and belief that

the stores have annual gross revenues exceeding $500,000.  *Id.* ¶¶ 18, 76.

The Defendants did not have a clocking system so Plaintiffs could not clock in and out to

track their hours.  *Id.* ¶¶ 35, 54.  Instead, Plaintiffs were paid a flat rate in cash weekly,

regardless of how many hours they worked.  *Id.* ¶¶ 36, 55, 63. Defendants also failed to provide

Plaintiffs with wage notices and wage statements required under NYLL §§ 195(1) and 195(3).

Dkt. No. 1 ¶¶ 99, 101.

Plaintiff Castillo worked for Entity Defendants prior to their purchase by Individual

Defendants, and continued to work for Defendants until March 2021.  *Id.* ¶¶ 29–31.  During his

employment, Castillo worked 60–70 hours per week; he worked six days a week from

approximately 9 A.M. to 8 P.M., though he often was required to begin earlier or end later.  *Id.*

2

¶¶ 33–34.  Defendants also agreed to pay Castillo a 10% commission on all phones, phone accessories, or phone plans he sold.  *Id*. ¶ 37.  However, they ultimately paid him a weekly rate of $780, regardless of how many hours he had worked or how many phones, phone accessories, or phone plans he had sold.  *Id*. ¶ 36.  His hourly rate was therefore between $11.14 and $13.

Castillo was also subject to discriminatory remarks by Abramov because of Castillo's sexuality as a gay man.  Dkt. No. 1 ¶ 39.  Abramov said he would not work alongside Castillo because of his sexuality, called him homophobic slurs (in English, Spanish, and Arabic), made false accusations against him, and made threats to Castillo and other employees that he would fire Castillo because of his sexual orientation.  *Id*. ¶¶ 40–44, 116.  Abramov ultimately fired Castillo and replaced him with a straight man.  *Id*. ¶¶ 46–47.  After his termination, Castillo made "much effort" to find a new job until June 2021.  Dkt. No. 24 ¶ 21.  He also alleges that, as a result of Abramov's discrimination, he suffered "extreme mental anguish, outrage, severe anxiety about [his] future, painful embarrassment . . . disruption of [his] personal life, and loss of the enjoyment of ordinary pleasures of everyday life."  *Id*. ¶ 20.

Plaintiff Herrera worked for Defendants from August 6, 2021 to October 2021, when he resigned.  Dkt. No. 1 ¶¶ 48–50.  Herrera regularly worked around 65 hours per week; he worked six days a week from approximately 10 A.M. to 7:30 P.M.  *Id*. ¶¶ 52–53.  He was paid a daily rate of $100 regardless of the hours he worked, such that he was paid $9.23 per hour.  *Id*. ¶ 55.

Plaintiff Vasquez worked for Defendants from March 2021 to October 27, 2021.  Dkt. No. 1 ¶¶ 56–57.  While her regular work schedule was 10 A.M. to 7:30 P.M., she alleges that she regularly worked over 10 hours per day, about 60 hours per week.  Dkt. No. 26 ¶ 6; Dkt. No. 1 ¶ 61. She was paid a daily rate of $130 regardless of the hours she worked, so her hourly rate was

$13.  Compl. ¶ 63.  She was also promised a 10% commission for every phone or phone accessory she sold, which Defendants failed to pay.  Dkt. No. 1 ¶ 64; Dkt. No. 26 ¶ 10.

## PROCEDURAL HISTORY

The Entity Defendants were served on August 29, 2022.  Dkt. No. 15; Dkt. No. 19.  Isakov was served on September 5, 2022, Dkt. No. 16, and Abramov was served on September 8, 2022, Dkt. No. 20.  On September 30, 2022, the Clerk of Court issued certificates of default against St. Nicholas Mobile and Isakov.  Dkt. No. 15; Dkt. No. 16.  On October 3, 2022, the Clerk of Court issued certificates of default against Vision Cellular and Abramov.  Dkt. No. 19; Dkt. No. 20.

On March 31, 2023, Plaintiffs filed a motion for default judgment against the Defendants.  Dkt. No. 21.  Defendants were served with that motion by mail on March 31, 2023.  Dkt. No. 27.  Defendants have not responded.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to plead or otherwise defend: the entry of a default, and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see also* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the

second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law. *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient to establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiffs "must therefore substantiate [their] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017). "To assess whether the plaintiff has established a sufficient basis for damages, a court has the discretion, but is not required, to hold a hearing." *Fonz, Inc. v. City Bakery Brands, LLC*, 2021 WL 5235190, at *3 (S.D.N.Y. Sept. 27, 2021); *see also Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y.*

*Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 189 (2d Cir. 2015).  "An inquest into damages may be conducted on the papers, without an evidentiary hearing where there is a sufficient basis on which to make a calculation."  *Fonz, Inc.*, 2021 WL 5235190, at *3; *see also Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir., 1997).

## DISCUSSION

As commercial retail workers in New York, Plaintiffs were employees within the meaning of FLSA § 203(e) ("[E]mployee means any individual employed by an employer."), and NYLL § 651(5) ("[A]ny individual employed or permitted to work by an employer in any occupation.").  Defendants qualify as employers under FLSA § 203(a)(d) (persons that act "directly or indirectly in the interest of an employer in relation to an employee) and NYLL § 651(6) ("[A]ny individual, partnership . . . [or] corporation . . . acting as employer").  Dkt. No. 1 ¶ 17.

Plaintiffs argue that the Entity Defendants should be considered a single integrated enterprise for the purposes of the FLSA and NYLL.  Dkt. No. 23 p. 13.  "In determining whether multiple defendants constitute a single employer [under the FLSA and NYLL], courts consider the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control."  *Perez v. Westchester Foreign Autos, Inc.*, 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013); *see also Syed v. S & P Pharmacy Corp.*, 2023 WL 2614212, at *2 (E.D.N.Y. Mar. 23, 2023).  "Where the single-integrated-enterprise theory applies, courts may impose liability for a violation 'not only on the nominal employer but also on another entity comprising part of the [single] integrated employer.'"  *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020) (quoting *Arculeo v. On-Site Sales & Mktg, LLC*, 425 F.3d 193, 198 (2d Cir. 2005)).  Here, the

6

Entity Defendants' operations are interrelated.  The Entity Defendants shared employees, Dkt. No. 1 ¶ 29, who sold Boost Mobile phone plans, cell phones, and cell phone accessories at both locations, *id.*  ¶¶ 11, 16, 32; *see Chica v. Shallu Constr. Corp.*, 2022 WL 970744, at *5 (E.D.N.Y. Mar. 31, 2022) ("[P]laintiffs have sufficiently pleaded that the operations of the various corporate defendants were interrelated: plaintiffs alleged that they performed tasks on construction sites on behalf of all three corporate defendants."); *see also Dobrosmylov v. DeSales Media Grp., Inc.*, 532 F. Supp. 3d 54, 62 (E.D.N.Y. 2021) ("For this factor, courts consider, among other facts, whether the entities 'share employees [or] services.'" (quoting *Geraci v. Rest. at Apple Greens, Inc.*, 2019 WL 1386318, at *14 (N.D.N.Y. March 27, 2019))). By managing the employees of both St. Nicholas Mobile and Vision Cellular, the Individual Defendants exercised centralized labor control over the Entity Defendants.  Dkt. No. 1 ¶¶ 13–14, 30; *see Galicia v. Ice Cream House on Bedford Ave LLC*, 2017 WL 6733985, at *4 (E.D.N.Y. Oct. 17, 2017) (finding centralized labor control when "[t]he Entity Defendants are allegedly owned and managed by the same individuals . . . [and] Plaintiff describes the Individual Defendants' shared functional control of the Entity Defendants' labor force").  The Individual Defendants were also the managers and owners of both Entity Defendants.  Dkt. No. 1 ¶¶ 13–15; *see Chicas v. Kelco Constr., Inc.*, 2023 WL 5016457, at *4 (S.D.N.Y. July 25, 2023) (concluding entities with a common manager and owner were a single integrated enterprise).  Thus, the Court holds the Entity Defendants were a single integrated enterprise.

Plaintiffs all worked more than 40 hours per week, yet they were not paid overtime wages.  *See* Dkt. No. 1 ¶¶ 34, 36, 53, 55, 59, 63.  The FLSA forbids an employer from having an employee work more than forty hours per workweek "unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which he is

employed."  29 U.S.C. § 207(a)(1).  New York law imposes the same overtime requirement.  *See Rosario v. Fresh Smoothies LLC*, 2021 WL 5847633, at *3 (S.D.N.Y. Dec. 9, 2021) (citing 12 N.Y.C.R.R. § 142-2.2)).  Thus, Defendants straightforwardly violated the FLSA and New York overtime requirements.  *See id.*; *Rosado v. Castillo*, 2021 WL 1172626, at *3 (S.D.N.Y. Mar. 29, 2021).

Defendants likewise violated the NYLL's minimum wage, spread-of-hour, wage notice, and wage statements provisions.  During the relevant period, employers in New York City had to pay employees a minimum wage of $15 per hour.  *See* N.Y. Lab. Law § 652(a).  As each Plaintiff was paid less than that rate, Defendants violated New York's minimum wage law.[1] "The NYLL requires employers to pay an employee who works a spread of hours in excess of 10 hours per day an additional hour of compensation at the minimum wage rate."  *Zhen Ming Chen v. Y Cafe Ave B Inc.*, 2019 WL 2324567, at *4 (S.D.N.Y. May 30, 2019) (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(a)).  Each Plaintiff regularly worked more than ten hours per day, but Defendants did not provide mandatory spread-of-hours pay.  Finally, the NYLL requires employers to furnish wage notices to their employees, disclosing the rate of pay, NYLL § 195(1)(a), and a wage statement, describing the dates of work covered, the applicable rates of pay, as well as relevant deductions, allowances, and other information, *id.* § 195(3).  Defendants violated those disclosure requirements by failing to give Plaintiffs wage notices and statements. *See Tambriz v. Taste & Sabor LLC*, 577 F. Supp. 3d 314, 327–28 (S.D.N.Y. 2021).  Thus,

---

[1] The Court looks to New York's minimum wage, rather than the federal minimum wage, because "[t]hroughout the relevant time period of Plaintiff[s'] employment, the New York City minimum wage was higher than the federal minimum wage."  *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 376 (E.D.N.Y. 2022).

Defendants are liable for violating the NYLL's overtime, spread-of-hour, wage notice, and wage statement provisions.

However, Plaintiffs have not alleged that these violations were willful.  Plaintiffs repeatedly assert that Defendants' actions were "knowing and willful," Dkt. No. 1 ¶¶ 21–24, 26, 66–67, 80, 84, 88, 90, 99–104, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to obtain a default judgment, *RJ Kitchen Assocs. Inc. v. Skalski*, 2019 WL 2436092, at *3 (E.D.N.Y. Feb. 25, 2019) (quoting *Iqbal*, 556 U.S. at 678).  Because Plaintiffs fail to "allege *facts* that permit a plausible inference that the defendant willfully violated the FLSA [and NYLL]," *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (emphasis added), the Court concludes Defendants' violations were not willful, *see Romero v. Manhattan & Bronx Surface Transit Operating Auth.*, 2022 WL 624451, at *5 (S.D.N.Y. Mar. 2, 2022); *Lopez v. Yossi's Heimishe Bakery Inc.*, 2015 WL 1469619, at *8 (E.D.N.Y. Mar. 30, 2015).

Plaintiffs are entitled to attorney's fees and costs.  "Under both the FLSA and the NYLL, [] prevailing plaintiff[s] may recover [their] reasonable attorney's fees and costs." *Almanzar v. 1342 St. Nicholas Avenue Rest. Corp.*, 2016 WL 8650464, at *12 (S.D.N.Y. Nov. 7, 2016) (citing *Najnin v. Dollar Mountain, Inc.*, 2015 WL 6125436, at *4 (S.D.N.Y. Sept. 25, 2015)); *see* 29 U.S.C. § 216(b); N.Y. Lab. L. § 198(1-a).  As Defendants violated both the FLSA and NYLL, Plaintiffs can recover reasonable attorney's fees and costs.

Plaintiffs can recover liquidated damages under either statute, but not both.  Plaintiffs "may not receive a 'double recovery' of back wages under both the FLSA and [the] NYLL." *Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 333 (1980)); *see also Rana v. Islam*, 887 F.3d 118,

123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").  Thus, "[b]ecause 'the law providing the greatest recovery will govern,' Plaintiffs are awarded liquidated damages under the NYLL, calculated at 100% of total wages owed under the minimum wage and overtime, available under both the FLSA and NYLL, and spread-of-hours claims, available only under the NYLL." *Sevilla v. House of Salads One LLC*, 2022 WL 954740, at *10 (E.D.N.Y. Mar. 30, 2022) (quoting *Charvac v. M & T Project Mgrs. of N.Y., Inc.*, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015)).

Under NYLL § 198(1-a), Plaintiffs are entitled to liquidated damages "equal to one hundred percent of such underpayments found to be due," unless Defendants can show that they had a "good faith basis to believe that [their] underpayment of wages was in compliance with the law," and up to three hundred percent of underpayments due if the violation was willful.  N.Y. Lab. L. § 198(1-a).  To present a defense, the employer must demonstrate that it took "active steps to ascertain the dictates of the [NYLL] and then act to comply with them."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999); *see also Rana*, 887 F.3d at 123 (explaining that there are "no meaningful differences" between the FLSA and NYLL liquidated damages provisions).  The employer must also show that its good-faith actions were objectively reasonable.  *RSR*, 172 F.3d at 142–43.  The Second Circuit has observed that "the employer's burden [is] 'a difficult one,' emphasizing that 'double damages [are] the norm and single damages the exception.'"  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting *RSR*, 172 F.3d at 142).  Defendants have not appeared in this action, let alone met that difficult burden.  No facts are pleaded that would give rise to an inference that Defendants had a good faith basis to believe that their underpayment of wages was in compliance with law.

But Plaintiffs are ineligible for treble liquidated damages because they have not shown Defendants' violations were willful.  Thus, Plaintiffs are entitled to liquidated damages awards in the amount of one hundred percent of their respective back wages—including minimum wage, overtime, and spread-of-hours pay.

Plaintiff Castillo is also entitled to a default judgment on his discrimination claims under the NYSHRL and NYCHRL.  Both the NYSHRL and NYCHRL proscribe discrimination based on sexual orientation.  *See* N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a); *see also Small v. N.Y.C. Dep't of Educ.*, 2023 WL 112546, at *5 (S.D.N.Y. Jan. 5, 2023).  To obtain a default judgment on a discrimination claim under the NYSHRL, a plaintiff must plead "(1) that []he is a member of a protected class, (2) that []he was qualified for the position . . . , (3) that []he suffered an adverse employment action, and (4) [that he] can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation."  *Small*, 2023 WL 112546, at *5 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).  "Given that the NYCHRL imposes a lower standard of liability, if Plaintiff has stated a discrimination claim under . . . the NYSHRL, he has necessarily stated a discrimination claim under the NYCHRL."  *Zagerson v. N.Y.C. Dep't of Educ.*, 2022 WL 292917, at *10 (S.D.N.Y. Jan. 31, 2022).  Castillo "is a gay man and thus belongs to a protected class."  *Cruz v. Bernstein Litowitz Berger & Grossman LLP*, 2023 WL 2691456, at *13 (S.D.N.Y. Mar. 29, 2023); *see also Williams v. J.P. Morgan Chase Bank*, 2005 WL 8167543, at *15 (S.D.N.Y. Oct. 11, 2005) ("[Plaintiff], as a homosexual, is a member of a protected class under the NYSHRL and NYCHRL.").  He worked at the Entity Defendants for two years selling cell phones and phone plans prior to his termination.  Dkt. No. 1 ¶¶ 29, 31–32.  As a result, he has adequately pleaded that he was qualified for his position.  *See Kobos v. Target Corp.*, 2018 WL 2943575, at *4 (E.D.N.Y. June

12, 2018) ("[Plaintiff] was qualified for the position as she had performed it for a number of years."); *Onorato v. TiMedx, LLC*, 2014 WL 4365076, at *2 (D. Conn. Sept. 2, 2014) ("[B]ecause [plaintiff] was employed by [defendant] for approximately three years, this Court can plausibly infer that by [defendant's] own standards he was qualified for his position." (citing *Quinones v. Kohler Mix Specialties, LLC*, 2010 WL 1782030, at *4 (D. Conn. Apr. 30, 2010))). Castillo suffered an adverse employment action when Abramov terminated his employment. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013); *Arnold v. Rsch. Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 288 (E.D.N.Y. 2016). Abramov repeatedly threatened to fire Castillo based on his sexuality, Dkt. No. 1 ¶¶ 42, 44, and subsequently "made good on his discriminatory threats" by firing Castillo and replacing him with a straight employee, *id.* ¶¶ 46–47. Those allegations amply suffice to raise an inference of discriminatory motivation. *See Williams v. Firequench, Inc.*, 2022 WL 3571752, at *3 (S.D.N.Y. Aug. 19, 2022) ("[Plaintiff] has presented evidence demonstrating an inference that the employer acted with discriminatory motivation, by alleging that a Firequench employee explicitly told her that it does not 'hire females for [the] position.'" (cleaned up)); *see also Garcha v. New York City*, 2023 WL 2663858, at *4 (S.D.N.Y. Mar. 28, 2023).

　　Abramov is liable for his discriminatory acts under the NYSHRL and NYCHRL. "[U]nder the NYSHRL, direct individual liability is 'limited to individuals with ownership interest or supervisors, who themselves[] have the authority to hire and fire employees.'" *Friederick v. Passfeed, Inc.*, 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31, 2022) (quoting *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365–66 (S.D.N.Y. 2012)). An owner or supervisor is only liable under the NYSHRL "if [she] actually participates in the conduct giving rise to the discrimination." *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004). Abramov

held an ownership in the Entity Defendants, exercised the authority to hire and fire employees, and directly perpetrated the discrimination against Castillo.  He is therefore individually liable for discrimination under the NYSHRL.  Additionally, "[t]he NYCHRL provides an even broader basis for direct individual liability than does the NYSHRL, in that it 'provides for individual liability of an employee regardless of ownership or decisionmaking power.'"  *Friederick*, 2022 WL 992798, at *9 (quoting *Malena*, 886 F. Supp. 2d at 366).  Thus, under the NYCHRL, supervisors and employees alike "may incur liability . . . for their own discriminatory conduct." *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 460 (N.Y. 2021); *see also Baptiste v. City Univ. of N.Y.*, 2023 WL 4266914, at *7 (S.D.N.Y. June 29, 2023); *Bueno v. Eurostars Hotel Co., S.L.*, 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10, 2022).  Abramov is individually liable under the NYCHRL for discrimination.

The Entity Defendants are also liable for Abramov's discrimination under the NYSHRL. For an employer to be liable for the discriminatory acts of its agent under that statute, the plaintiff must "demonstrate that the employer acquiesced in the discriminatory conduct or subsequently condoned it."  *Father Belle Cmty. Ctr. v. N.Y. State Div. of Hum. Rts. ex rel. King*, 642 N.Y.S.2d 739, 746 (4th Dep't 1996); *see also Marchuk*, 100 F. Supp. 3d at 307 (the plaintiff must show the employer "encouraged, condoned, or expressly or impliedly approved" the challenged conduct); *M.H. v. Starbucks Coffee Co.*, 2023 WL 5211023, at *4 (S.D.N.Y. Aug. 13, 2023); *Hoit v. Cap. Distr. Transp. Auth.*, 805 F. App'x 41, 45 (2d Cir. 2020); *Grand Union Co. v. Mercado*, 694 N.Y.S.2d 524, 526 (3d Dep't 1999).  "Condonation, which may sufficiently implicate an employer in the discriminatory acts of its employee to constitute a basis for employer liability under the Human Rights Law, contemplates a knowing, after-the-fact forgiveness or acceptance of an offense.  An employer's calculated inaction in response to

13

discriminatory conduct may, as readily as affirmative conduct, indicate condonation." *State Div. of Human Rights ex rel. Greene v. St. Elizabeth's Hosp.*, 487 N.E.2d 268, 269 (N.Y. 1985).  A "defendant may disprove condonation by a showing that it reasonably investigated complaints of discriminatory conduct and took corrective action." *Vitale v. Rosina Food Prod. Inc.*, 727 N.Y.S.2d 215, 218 (4th Dep't 2001); *Riverbay Corp. v. Serv. Emps. Int'l Union, Loc. 32BJ*, 2023 WL 3738984, at *6 (S.D.N.Y. May 31, 2023).  To satisfy the condonation requirement "where the complainant is [discriminated against] by a low-level supervisor or a coemployee, the complainant is required to establish only that upper-level supervisors had knowledge of the conduct and ignored it; if so, the [discrimination] will be imputed to the corporate employer and will result in imposition of direct liability." *Father Belle Cmty. Ctr.*, 642 N.Y.S.2d at 747. Conversely, where it is an upper-level supervisor who is responsible for the discrimination, liability is automatically imputed to the corporation, as the involvement of an upper-level supervisor establishes the corporation's acquiescence or condonation.  *See id.*; *cf. McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 669 N.Y.S.2d 122, 128 (Sup. Ct. 1997) ("[W]here acts of discrimination are perpetrated by a high-level managerial employee, . . . the employer may be liable even without any showing of condonation or acquiescence."); *Franklin v. City of New York*, 2003 WL 21511932, at *8 (S.D.N.Y. July 1, 2003), *aff'd*, 99 F. App'x 315 (2d Cir. 2004). Because "there is no opportunity to make a complaint to upper-level management where the [perpetrator] is the highest ranking supervisor" a separate condonation requirement would be "unfair and impractical." *Father Belle*, 642 N.Y.S.2d at 747.  Here, Abramov co-owned and co-managed both of the Entity Defendants.  Dkt. No. 1 ¶ 13.  Accordingly, he is the kind of high-level managerial employee whom New York courts have deemed sufficiently senior to obviate the need for a victim of discrimination to show condonation or acquiescence.  *See Father Belle*,

642 N.Y.S.2d at 747 (applying the exception to "the highest ranking executive of the [Community] Center"); *McIntyre*, 669 N.Y.S.2d at 124–25 (same to "the head of the entire services and parts department" and a "floor supervisor"). Because Castillo was subject to discrimination by a high-level supervisor of the Entity Defendants, the Entity Defendants are liable for discrimination under the NYSHRL.[2]

The Entity Defendants are likewise liable for Abramov's discrimination under the NYCHRL. "[T]he NYCHRL imposes liability on the employer in three instances: (1) where the offending employee 'exercised managerial or supervisory responsibility' . . . ; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate corrective action'; and (3) where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent [it].'" *Zakrzewska v. New Sch.*, 928 N.E.2d 1035, 1039 (N.Y. 2010) (quoting N.Y.C. Admin. Code § 8-107(13)(b)). The first of these alternatives "is a strict liability provision that holds the employer legally responsible without regard to whether the employer knew or should have known of the conduct of the managerial employee." *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547, 557 (S.D.N.Y. 2013). "While the term 'managerial or supervisory authority,' is not defined in NYCHRL, this concept is broadly understood in the context of employment discrimination claims to refer to an individual employee's authority 'to take tangible employment actions against the victim, *i.e.* to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly

---

[2] The automatic imputation of liability under the NYSHRL to an employer when the perpetrator of discrimination is a high-level manager is analogous, but not identical, to Title VII's strict liability regime for harassment by a supervisor. *See Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d. Cir. 2015).

different responsibilities, or a decision causing a significant change in benefits.'" *Mejia v. City of New York*, 2020 WL 2837008, at *16 (E.D.N.Y. May 30, 2020) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013)).  Abramov "exercised managerial and supervisory duties as the [Entity Defendant's] co-owner and manager as well as Plaintiff's supervisor." *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 297 n.5 (S.D.N.Y. 2016).  As a result, the Entity Defendants are strictly liable for Abramov's discrimination under the NYCHRL.

By contrast, Isakov is not individually liable under the NYSHRL or NYCHRL.  While Castillo alleges that Isakov "knew or should have known that Mr. Abramov was engaged in this behavior," Dkt. No. 1 ¶ 116, that allegation is conclusory and, in any event, Castillo does not aver that Isakov "actually participate[d] in the conduct giving rise to the discrimination," *Mahoney v. City of Albany*, 181 N.Y.S.3d 716, 722 (3d Dep't 2022) (quoting *Feingold*, 366 F.3d at 157).  As a result, Isakov cannot be held individually liable under the NYSHRL or NYCHRL for Abramov's discrimination.  *See Friederick*, 2022 WL 992798, at *9 ("Under both the NYSHRL and the NYCHRL, though, 'individual liability . . . is limited to cases where an individual defendant . . . actually participates in the conduct giving rise to the plaintiff's [discrimination or] retaliation claim.'" (quoting *Malena*, 886 F. Supp. 2d at 366) (alteration in original)).

Castillo is not entitled to a default judgment on his retaliation claims under the NYSHRL or NYCHRL.  Under the former, a plaintiff must show (1) that they were engaged in a protected activity, (2) that the defendant was aware of that activity, (3) that the plaintiff suffered an adverse action based on their activity, and (4) that there was a causal connection between the protected activity and the adverse action.  *Reichman v. City of New York*, 117 N.Y.S.3d 280, 287 (2d Dep't 2020).  While the NYCHRL has the same first, second, and fourth prongs as the NYSHRL; the

third prong differs in that a plaintiff need only show conduct reasonably likely to deter a person

from engaging in that protected activity.  *Id.*; *see also Sanderson-Burgess v. City of New York*,

102 N.Y.S.3d 678, 681 (2d Dep't 2019).  An individual engages in protected activity under the

NYSHRL when she "oppose[s] any practices forbidden under this article or . . . file[s] a

complaint, testifie[s] or assist[s] in any proceeding under this article."  N.Y. Exec. Law § 296.

The NYCHRL "defines the activities protected against retaliation more broadly than the

NYSHRL."  *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020).  It

forbids retaliating against an employee who:

> (i) oppose[s] any practice forbidden under this chapter; (ii) file[s] a complaint, testified or assisted in any proceeding under this chapter, (iii) commence[s] a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assist[s] the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provide[s] any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8–115 of this chapter.

N.Y.C. Admin. Code § 8-107(7).  But Castillo has not alleged that he opposed Abramov's

discriminatory actions.  *See* Dkt. No. 1 ¶ 113.  Nor has he alleged that he filed a complaint,

testified, or otherwise gave information to or assisted with any anti-discrimination inquiry or

proceeding.  And while Castillo did file the instant lawsuit, he did so only *after* the purported

retaliation had already taken place.  *See Jones v. Yonkers Pub. Sch.*, 326 F. Supp. 2d 536, 549

(S.D.N.Y. 2004) ("A plaintiff may not, however, satisfy the causal connection element if the

protected conduct occurred after the adverse employment action.").  Thus, the Court cannot grant

Castillo a default judgment on his retaliation claims under either the NYSHRL or the NYCHRL.

Finally, after reviewing the materials submitted by Plaintiffs and their counsel, the Court

believes a further inquest is necessary to determine the appropriate damages for all counts.  The

dates of employment provided by each Plaintiff are insufficiently precise for the Court to

determine the appropriate damages for Counts I–IV, and for back pay and lost wages owed under Count V.  Plaintiffs must provide specific start and end dates for their employment, as best as they are able, rather than mere months, because a month could involve as many as thirty-one days or as few as one day of unpaid labor.  Plaintiffs must also provide evidence of commissions they are owed.  The Court also requires additional information about Castillo's efforts to find new employment after his termination and the severity of his emotional distress to calculate the appropriate damages for his discrimination claim.[3]  And, for the Court to award attorney's fees, Plaintiffs will need to resubmit evidence of hours worked and accrued costs, as they submitted an invoice for the wrong case.

The motion for default judgment is GRANTED in part and DENIED in part, and the case is referred to Magistrate Judge Gary Stein for an inquest into damages.  Plaintiffs are directed to submit the requested supplemental materials and to file a renewed motion for default judgment as to damages.  The Clerk is respectfully directed to close Dkt. No. 21.


SO ORDERED.


Dated: October 12, 2023
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge


---

[3] The Court notes that punitive damages are unavailable under the NYSHRL.  *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 101 (2d Cir. 2001).  But Plaintiffs' request for damages should address in a non-conclusory manner why, if he seeks such relief, Castillo is entitled to punitive damages under the NYCHRL against both Abramov and the Entity Defendants.  *Cf. Williams*, 2022 WL 3571752, at *9.