UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

| | |
|---|---|
| NICHOLAS CASTILLO, ARMANDO HERRERA, and SHERIDDAN VASQUEZ, | : 22 Civ. 6888 (LJL) (GS)<br>:<br>: REPORT &<br>: RECOMMENDATION |
| Plaintiffs, | : |
| - against - | :<br>: |
| ROMAN ISAKOV, DAVID ABRAMOV, VISION CELLULAR INC., and ST. NICHOLAS MOBILE OF NY INC., | :<br>:<br>: |
| Defendants. | :<br>: |

-------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

This action is before the Court for an inquest and report and recommendation on damages following entry of a default judgment in favor of Plaintiffs Nicholas Castillo ("Castillo"), Armando Herrera ("Herrera"), and Sheriddan Vasquez ("Vasquez") (collectively, "Plaintiffs"), who worked at cellular phone stores operated by Defendants. (*See* Dkt. Nos. 29–33).

In his ruling on Plaintiffs' motion for a default judgment, the Honorable Lewis J. Liman, United States District Judge, held Defendants liable on Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and N.Y. Labor Law ("NYLL") §§ 190 *et seq.* (Dkt. No. 28 at 8, *reported as Castillo v. Isakov*, No. 22 Civ. 6888 (LJL), 2023 WL 6664552, at *4 (S.D.N.Y. Oct. 12, 2023)). Judge Liman also found certain Defendants liable on Plaintiff Castillo's claims for unlawful discrimination under the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code §§ 8-101 *et seq.* *Castillo*, 2023 WL 6664552, at *5–7.

Defendants have not appeared at any point in this action and have not opposed Plaintiffs' motion for default or responded to Plaintiffs' submissions in support of their damages claims. For the reasons set forth below, the Court recommends that damages, interest, attorney's fees, and costs be awarded to Plaintiffs in the amounts outlined herein.

## BACKGROUND

### A. Relevant Facts[1]

Defendants Vision Cellular Inc. ("Vision Cellular") and St. Nicholas Mobile of NY Inc. ("St. Nicholas Mobile") (collectively, the "Entity Defendants") are both authorized dealers of Boost Mobile. (Dkt. No. 1 ¶¶ 9–11, 16). On or about March 1, 2021, Defendants Roman Isakov ("Isakov") and David Abramov ("Abramov") (collectively, the "Individual Defendants") purchased the Entity Defendants from their prior owners. (*Id.* ¶ 30; Dkt. No. 31 Ex. C ¶ 3). Following the purchase, the Individual Defendants ran the stores during the relevant periods. (Dkt. No. 1 ¶¶ 11–17). Plaintiffs worked for the Entity Defendants at locations in upper Manhattan and the Bronx during 2021, greeting and assisting customers, and

---

[1] The fact set forth herein are taken from Plaintiff's Complaint (Dkt. No. 1) and affidavits submitted in March 2023 and April 2024 by each Plaintiff in connection with their motion for default judgment (Dkt. No. 31 Exs. C & D (Castillo), E & F (Herrera), G & H (Vasquez)).

selling cellphones, cellphone plans, and other goods.[2]  (Dkt. No. 31 Exs. C ¶ 5, E ¶ 6, G ¶ 5).

Defendants failed to provide any system for tracking or recording employee hours.  (Dkt. No. 31 Ex. C ¶ 6, E ¶ 9, G ¶ 6).  Instead, Plaintiffs were paid a weekly or daily flat rate in cash, regardless of the number of hours worked.  (Dkt. Nos. 31 Exs. C ¶ 6, E ¶ 10, G ¶ 7).  Defendants also failed to provide Plaintiffs with wage notices and wage statements required under NYLL §§ 195(1) and 195(3).  (Dkt. No. 31 Exs. D ¶¶ 25–26, E ¶¶ 15–16, G ¶¶ 18–19; *see* Dkt. No. 1 ¶¶ 99, 101).

Each Plaintiff's circumstances differ with respect to the time period they worked for Defendants, the hours they worked per week, and the amounts they were paid.

### 1.  Plaintiff Castillo

Castillo began working at the Boost Mobile stores in or about March 2019, two years prior to the Individual Defendants' purchase of the Entity Defendants.  (Dkt. No. 31 Ex. C ¶ 3).  After the purchase, Castillo worked for Isakov and Abramov for four weeks, from March 1, 2021, until he was discharged on March 27, 2021.  (*Id.* ¶¶ 3–4).[3]  During this time, Castillo worked six days a week, Monday through Saturday, from approximately 9 a.m. to 8 p.m., with some variation.  (*Id.* ¶ 6).  Presumably to account for this variation, Castillo states that he worked an

---

[2] Plaintiffs assert that they each worked at two locations.  All state that they worked at 1491 St. Nicholas Ave., New York, NY 10033, but each Plaintiff lists a different address as their second location of employment.  (*See* Dkt. No. 31 Exs. C ¶ 3, E ¶ 3, G ¶ 3).

[3] Castillo seeks unpaid wages and other damages only from when Isakov and Abramov took over the stores.  He does not seek damages for the two-year period prior to their ownership.  (Dkt. No. 31 Ex. C ¶ 3).

average of 65 hours per week. (*Id.* ¶ 6). Despite regularly working 25 hours of overtime each week, Castillo was paid a fixed weekly wage of $780, or about $12 an hour. (*Id.*).

Throughout the four weeks he was employed by Defendants, Castillo was subjected to discrimination and harassment due to his sexual orientation. (*Id.* ¶ 7; Dkt. No. 31 Ex. D ¶¶ 13–19). Specifically, because Castillo is a gay man, Defendant Abramov refused to work with Castillo, threatened to fire him, used derogatory terms against him, and made discriminatory and threatening comments against Castillo to his coworkers. (Dkt. No. 31 Ex. D ¶¶ 15–17). On March 27, 2021, Defendant Abramov terminated Castillo's employment and replaced him "with a straight male." (*Id.* at ¶ 19; Dkt. No. 31 Ex. C ¶¶ 4, 8).

### 2. Plaintiff Herrera

Herrera was employed by Defendants from August 10, 2021, until he resigned on October 8, 2021. (Dkt. No. 31 Ex. E ¶¶ 3, 5). Throughout his employment, Herrera worked for Isakov and Abramov. (*Id.* ¶¶ 4–5). Herrera worked six days a week, Monday through Saturday, from approximately 10 a.m. to 7:30 p.m., about 9.5 hours per day. (*Id.* ¶ 7). Regardless of hours worked, Herrera was paid a daily rate of $100, or $600 per week, which is about $10.50 an hour. (*Id.* ¶ 10).

Herrera alleges he "worked around 65 hours a week." (Dkt. No. 31 Ex. E ¶ 8; Dkt. No. 30 at 7). However, the hours he describes working in his affidavits do not bear this out. Herrera states that his "regular work schedule was 6 days per week .

. . from about 10 am to 7:30 pm." (Dkt. No. 31 Exs. E ¶ 7, F ¶ 7). This amounts to 9.5 hours per day, which equals 57 hours per week when multiplied by the six days Herrera worked each week. Herrera has provided no other evidence that would substantiate his claim to have regularly worked 65 hours per week.

### 3. Plaintiff Vasquez

Vasquez was employed by Defendants from March 23 until October 27, 2021. (Dkt. No. 31 Ex. G ¶¶ 3–4). Throughout her employment, Vasquez worked for Isakov and Abramov. (*Id.* ¶¶ 3, 6). Vasquez worked six days a week, Wednesday through Monday, from approximately 9 a.m. or 10 a.m. to 7:30 p.m. or 8:00 p.m. (ranging from 9.5 to 11 hours per day), with some variation. (*Id.* ¶ 6). Vasquez estimates that, on average, she worked approximately 60 hours per week. (*Id.*; *see* Dkt. No. 30 at 12). Like Castillo, Vasquez was paid a fixed weekly rate of $780, or anywhere from $13.68 to $11.81 per hour. (Dkt. No. 31 Ex. G ¶ 7).

In addition to her hourly pay, Vasquez alleges that Defendants orally "agreed to pay [her] commission at a rate of 10% of all sales of every phone that [she] sold . . . ." (*Id.* ¶ 8). The commission agreement was never reduced to writing. (*Id.*). Vasquez states that she received the agreed upon commission for the first two months, $430 for the first month and $668 for the second, but that no commissions were paid after that. (*Id.* ¶¶ 9–10). Vasquez asserts that she is owed anywhere from $600–$800 per month in commissions for the remaining five months of her employment, or a total of $3,500. (*Id.* ¶ 11).

## B. Procedural History

After commencing this action on August 12, 2022, Plaintiffs served the Entity Defendants on August 29, 2022 and Individual Defendants Isakov and Abramov on September 5 and September 8, 2022, respectively. (Dkt. Nos. 1, 5–8). The Clerk's Office issued certificates of default against Defendants St. Nicholas Mobile and Isakov on September 30, 2022, and against Vision Cellular and Abramov on October 3, 2022. (Dkt. Nos. 15–16, 19–20). Plaintiffs moved for default judgment on March 31, 2023, and served Defendants with their motion papers the same day, which included, *inter alia*, affidavits from each Plaintiff. (Dkt. No. 21, 27).

On October 12, 2023, Judge Liman issued an Opinion & Order granting in part and denying in part Plaintiffs' motion for default judgment. Judge Liman first found that all four Defendants qualify as employers under the FLSA and NYLL, and that the two Entity Defendants were a single integrated enterprise under the FLSA and NYLL. *Castillo*, 2023 WL 6664552, at *3. Judge Liman then found all Defendants liable to each Plaintiff for violating the FLSA's and NYLL's overtime requirements and the NYLL's minimum wage, spread-of-hour, wage notice, and wage statement provisions. *Id*. at *4. Judge Liman also found that both Entity Defendants and Abramov were liable to Castillo for discrimination on the basis of sexual orientation in violation of the NYCHRL and NYSHRL. *Id*. at *5–7.[4]

---

[4] By contrast, Judge Liman held that Castillo's allegations were insufficient to establish liability on the part of Defendant Isakov on Castillo's discrimination claims. *Id*. at *7. Judge Liman also denied Castillo's motion for default judgment on Castillo's retaliation claims under the NYSHRL and NYCHRL. *Id*.

6

Turning to the subject of damages, Judge Liman found that an "inquest is necessary to determine the appropriate damages for all counts." *Id*. at *8. He found Plaintiffs' submissions lacking for the following reasons: (i) the dates of employment for each Plaintiff were insufficiently precise; (ii) Plaintiffs needed to provide evidence of commissions they allegedly are owed; (iii) Castillo needed to provide additional information about his efforts to find new employment after he was terminated and the severity of his emotional distress; and (iv) Plaintiffs' counsel would need to submit evidence of hours worked and accrued costs to justify his requested award of attorney's fees. *Id*. Judge Liman then referred this action to the undersigned for an inquest into damages. *Id*. (*See* Dkt. No. 33).

Following Judge Liman's Opinion & Order, Plaintiffs filed a renewed motion for default on April 17, 2024 pertaining to damages (Dkt. No. 29) and supporting materials, which included a memorandum of law in support of the motion (Dkt. No. 30), a declaration from Plaintiffs' counsel Mohammad Gangat (Dkt. No. 31), additional affidavits from each of the Plaintiffs (*id*. Exs. C–H), counsel's time entries (*id*. Ex. I), and Plaintiff's proposed default judgment (Dkt. No. 32). This Court scheduled an inquest hearing but, on October 21, 2024, cancelled the hearing after deeming it unnecessary upon reviewing the submitted written materials. (Dkt. Nos. 35–36). The Order cancelling the hearing, which was served on Defendants on October 25, 2024, informed both parties that they had until November 15, 2024, to request an in-person hearing. (Dkt. Nos. 36–37). Neither party made such a request.

7

The October 21 Order also directed Plaintiffs to provide a submission on Castillo's reasonable efforts to mitigate damages related to his discrimination claim after his termination.  (Dkt. No. 36)  In response, Plaintiffs' counsel filed a letter withdrawing Castillo's claim for back pay damages.  (Dkt. No. 38).

Following the Second Circuit's August 30, 2024 decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024), which impacted the standard for Article III standing for wage notice and wage statement violations under NYLL § 195, this Court allowed Plaintiffs to provide supplemental briefing on the issue. (Dkt. No. 40)  Plaintiffs submitted a letter in support of their request for statutory damages, which was accompanied by a supporting affidavit from each Plaintiff. (Dkt. No. 43 & Exs. 1, 2, 3).

## LEGAL STANDARDS

Under Rule 55 of the Federal Rules of Civil Procedure, a plaintiff may be granted a default judgment when the defendant fails to appear or defend against the action.  Fed. R. Civ. P. 55(a)–(b); *see Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const.*, LLC, 779 F.3d 182, 186 (2d Cir. 2015).  Once a defendant has defaulted, the court must accept "as true the well-pleaded allegations in the Complaint, with the exception of those allegations relating to damages."  *Yu v. Shanghai Dumpling, Inc.*, No. 19 Civ 7601 (ALC) (VF), 2023 WL 8438669, at *2 (S.D.N.Y. Oct. 5, 2023), *R&R adopted*, 2023 WL 7321595 (S.D.N.Y. Nov. 7, 2023); *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)) ("It is an 'ancient common law axiom' that a defendant who

defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir. 2004).

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "'Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount.'" *Ramos v. CJ Contractor Servs., Inc.*, No. 23 Civ. 274 (JLR) (KHP), 2024 WL 3954330, at *2 (S.D.N.Y. Aug. 2, 2024) (quoting *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158), *R&R adopted sub nom.,* 2024 WL 3952643 (S.D.N.Y. Aug. 27, 2024).

"Plaintiffs bear the burden of establishing [] entitlement to the amount of damages" sought, but are "'entitled to all reasonable inferences in [their] favor based upon the evidence submitted.'" *Baker v. Weber*, No. 19 Civ. 1093 (JPC) (GWG), 2022 WL 3589095, at *2 (S.D.N.Y. Aug. 23, 2022) (citation omitted), *R&R adopted,* 2023 WL 199009 (S.D.N.Y. Jan. 17, 2023). The calculation of damages involves "[1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under the rule." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

In cases seeking unpaid wages under the FLSA and NYLL, "a plaintiff must produce 'sufficient evidence' to show the hours they worked 'as a matter of just and reasonable inference.'" *Juarez v. Manhattan Laundry Centers Inc.*, No. 18 Civ. 2843 (VSB), 2023 WL 3614264, at *2 (S.D.N.Y. May 24, 2023) (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)); *see also Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 301 (S.D.N.Y. 2019). "Under the FLSA and NYLL, if an 'employer has defaulted, a court may presume the employee's recollection of hours to be correct.'" *Zhang v. Great Sichuan on 3rd Ave. Inc.*, No. 15 Civ. 4558 (JGK) (JW), 2024 WL 1159002, at *1–2 (S.D.N.Y. Feb. 2, 2024) (citation omitted), *R&R adopted,* 2024 WL 1158451 (S.D.N.Y. Mar. 15, 2024); *see Ortega v. Frozen Deli & Grocery Inc.*, No. 24 Civ. 1231 (JLR) (SLC), 2024 WL 4751732, at *4 (S.D.N.Y. Oct. 22, 2024) ("The Court may credit plaintiffs' 'recollections regarding their hours and pay in conducting [the] inquest.'") (quoting *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018)).

While Rule 55 allows the Court to "conduct hearings [to] determine the amount of damages," Fed. R. Civ. P. 55(b)(2)(B), a damages hearing is not required. The Court may conduct an inquest into damages based solely upon the written submissions of the parties. *Bricklayers & Allied Craftworkers*, 779 F.3d at 189; *see also Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) ("There must be an evidentiary basis for the

damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); *K2M Design, Inc. v. Schmidt*, No. 22 Civ. 3069 (MKV) (GS), 2023 WL 10674525, at *8 (S.D.N.Y. Nov. 30, 2023) ("The Second Circuit has upheld damages determinations made on the basis of affidavits and other documentary evidence without a hearing as long as the Court is ensured that there was a basis for the damages specified in the default judgment.") (citations omitted), *R&R adopted*, 2024 WL 1208910 (S.D.N.Y. Mar. 21, 2024).

The motion papers for Plaintiffs' motion for default were served on Defendants on March 31, 2023 (Dkt. No. 27), and the Court's order for additional briefing with leave to request an evidentiary hearing on damages was served on October 29, 2024 (Dkt. Nos. 36–37). Both parties were given the opportunity to request an evidentiary hearing as to the issue of damages and neither party did so. (Dkt. No. 36). Defendants failed to submit any opposition or to respond to the judgment entered against them, and the Court has found it unnecessary to hear live testimony or otherwise hold a hearing to determine Plaintiffs' damages. (*Id*.). Therefore, the Court has conducted its inquest based solely on Plaintiffs' submissions.

## DISCUSSION

All three Plaintiffs seek the following remedies on their claims under the FLSA and NYLL: (1) unpaid minimum and overtime wages; (2) unpaid spread-of-hours wages; (3) liquidated damages, (4) damages for failure to provide wage notices

and accurate wage statements; and (5) pre- and post-judgment interest.  (Dkt. No.
30 at 22–23).  Vasquez also seeks unpaid commissions (*id*. at 23), and Castillo seeks
compensatory and punitive damages on his discrimination claims under the
NYSHRL and NYCHRL (*id*.).  In addition, Plaintiffs seek recovery of their
attorney's fees and costs.  (*Id*. at 24).  The Court discusses each category of
requested damages below.

### A.  Unpaid Wages

As noted above, in his October 12, 2023 Opinion and Order, Judge Liman
determined that Defendants were liable for violations of the FLSA and NYLL
overtime requirements and for violations of the NYLL's minimum wage and spread-
of-hour provisions.  *Castillo*, 2023 WL 6664552, at *4.

### 1.  Applicable Legal Principles

Both the FLSA and NYLL require employers to pay the applicable minimum
wage, and "forbid[] an employer from having an employee work more than forty
hours per workweek" without compensation "'at a rate not less than one and one-
half times the regular rate at which he is employed.'"  *Id*. at *4 (quoting 29 U.S.C. §
207(a)(1)); *see* N.Y. Lab. Law § 652.  "If an employee was paid below the minimum
wage, 'the Court calculates appropriate overtime wages "by multiplying . . . the
minimum wage by one and one-half,' then multiplying that rate 'by the number of
hours in excess of forty hours the employee worked each week.'"  *Zhang*, 2024 WL
1159002, at *3 (quoting *Burns v. Scott*, 635 F. Supp. 3d 258, 280 (S.D.N.Y. 2022)).
In 2021 and 2022, the applicable New York minimum wage was $15 per hour,

making the applicable overtime rate $22.50 per hour.  N.Y. Lab. Law § 652(a)

(McKinney 2020); *see Castillo*, 2023 WL 6664552, at *4 ("During the relevant

period, employers in New York City had to pay employees a minimum wage of $15

per hour.") (citing N.Y. Lab. Law § 652(a)).

The NYLL spread-of-hours provision requires that covered employees receive

"one hour's pay at the basic minimum hourly wage . . . for any day in which . . . the

spread of hours exceeds 10 hours[.]"  12 N.Y.C.R.R. § 142-2.4(a).  Consequently,

Plaintiffs were entitled to an additional $15 for any day that they worked a shift

that exceeded ten hours, "includ[ing] time off for meals plus intervals off duty."  *Id.*

§ 142-2.18.

### 2.  Plaintiffs' Damages

#### a.  Castillo

Castillo worked 65 hours per week for four weeks and was paid a fixed

weekly rate of $780.  Forty of those hours should have been paid at the New York

minimum wage rate of $15 per hour, and 25 of his weekly hours should have been

paid at the applicable overtime rate of $22.50 per hour.  N.Y. Lab. Law § 652(a).

Under the FLSA and NYLL, Castillo was entitled to a total of $1,162.50 per week:

$600 for the first 40 hours and $562.20 for the 25 hours of overtime.[5]  Thus, Castillo

is owed an additional $382.50 per week.[6]  Castillo claims unpaid wages for a total of

---

[5] ($15 x 40hrs = $600) + ($22.50 x 25hrs = $562.50) = $1,162.50

[6] $1,162.50 - $780 = $382.50

four weeks, from Monday, March 1 to Saturday, March 27, 2021, resulting in total unpaid minimum and overtime wages of $1,530.[7]

Castillo is also owed spread-of-hours wages. Castillo alleges in his affidavit that he worked six days a week, 65 hours each week on average, with his span of day varying but generally beginning at 9 a.m. and ending at 8 p.m. As stated above, the Court is to make reasonable inferences in favor of Plaintiffs based on the evidence provided. *See Baker,* 2022 WL 3589095, at *2. Therefore, the Court finds that Castillo was owed spread-of-hours wages for the six days he worked each week. Thus, Castillo is owed an additional $90 per week, for a total of $360 in spread-of-hours wages over the four weeks of employment.

The Court thus recommends awarding Castillo a total of $1,890 in unpaid wages.[8]

### b. Herrera

Herrera's regular hours were Monday through Saturday from approximately 10:00 a.m. to 7:30 p.m., about 9.5 hours per day. (Dkt. No. 31 Ex. E ¶ 7). Herrera worked from Tuesday, August 10, 2021, until he resigned on Friday, October 8, 2021, for a total of nine weeks. (Dkt. No. 31 Ex. E ¶¶ 3, 5). For seven of those weeks, Herrera worked six days (57 hours each week), and for two of those weeks, Herrera's first and last weeks, he worked five days (47.5 hours). Thus, for the seven weeks that Herrera worked 57 hours (40 at the minimum wage and 17 hours at the

---

[7] $382.50 x 4 weeks = $1,530

[8] $360 spread-of-hours + $1,530 overtime = $1,890

applicable overtime rate), Herrera should have been paid $982.50.[9]  Instead, Herrera was paid $100 per day, or $600 for the week, and is therefore owed $382.50 for each of the seven weeks he worked six days per week, for a total of $2,677.50.[10] For the two weeks that Herrera worked 47.5 hours (40 hours at the minimum wage and 7.5 half of overtime), Herrera should have been paid $768.75 rather than the $500 he was paid.[11]  Therefore, he is owed an additional $537.50 for those two weeks.[12]

Unlike Castillo, Herrera is not owed any compensation under the spread-of-hours provision because Herrera has not shown that he worked a day that had a spread of hours longer than ten hours.  12 N.Y.C.R.R. § 142-2.4(a).  Herrera worked from 10:00 a.m. to 7:30 p.m., which is a span of only 9.5 hours.  *See Kim v. Superior Cafe Corp.*, No. 21 Civ. 3620 (GBD) (RWL), 2021 WL 5315704, at *4 (S.D.N.Y. Oct. 7, 2021) (finding that plaintiff was not entitled to spread-of-hours pay because he stated he regularly worked ten-hour days and did not state that any of his work days exceeded ten hours), *R&R adopted*, 2022 WL 481725 (S.D.N.Y. Feb. 15, 2022). Thus, because there is no basis for spread-of-hours pay, the Court recommends that Herrera be awarded a total of $3,215 for unpaid minimum and overtime wages.[13]

---

[9] ($15 x 40hrs = $600) + ($22.50 x 17hrs of OT = $382.50) = $982.50

[10] ($982.50 - $600 = $382.50) x 7wks = $2,677.50

[11] ($15 x 40hrs = $600) + ($22.50 x 7.5hrs of OT = $168.75) = $768.75

[12] ($268.75 x 2wks = $537.50)

[13] $2,677.50 + $537.50 = $3,215

### c. Vasquez

Vasquez was employed by Defendants from Tuesday, March 23 until Wednesday, October 27, 2021.  (Dkt. No. 31 Ex. G ¶¶ 3–4).  Vasquez regularly worked six days a week, Wednesday through Monday, from approximately 9 a.m. or 10 a.m. to 7:30 p.m. or 8:00 p.m.  (*Id.* ¶ 6).  Accepting that Vasquez worked an average of 60 hours per week, as stated in her first affidavit (Dkt. No. 31 Ex. H ¶ 7), Vasquez should have received $1,050 for each six-day week worked, rather than the $780 she did receive.[14]  Vasquez is therefore owed $270 for each six-day workweek.[15]

Vasquez was employed by Defendants for 31 six-day workweeks, plus one day in her final week.[16]  Vasquez has not provided the Court with specific hours worked in her last week, nor whether she was paid for that day and what she was paid. Therefore, the Court will exclude that day from its calculations.  Thus, the Court recommends awarding Vasquez $8,370 in unpaid minimum and overtime wages.[17]

While Plaintiffs' counsel asserts that Vasquez is owed spread-of-hours pay for all six days worked each week (Dkt. No. 30 at 13), a proper basis for this assertion

---

[14] ($15 x 40hrs = $600) + ($22.50 x 20hrs of OT = $450) = $1,050

[15] $1,050 - $780 = $270

[16] Accepting that Vasquez's regular work week was Wednesday through Monday, in her penultimate week of employment she would have worked through Monday, October 25, 2021.  *See* 29 C.F.R. § 778.105 ("An employee's workweek is a fixed and regularly recurring period of 168 hours—seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day.").  Tuesday, October 26 would have been her day off, and she would have worked her last day on Wednesday, October 27, 2021, which would have been the first day of her next work week and was the first and only day of her final workweek.  The Court also assumes that for her first week of employment, Vasquez worked Tuesday, March 23, 2021 through Sunday, March 28, 2021, as her affidavit states she worked six days each week.  (Dkt. No. 31 Ex. G ¶ 6).

[17] $270 x 31wks = $8,370

16

cannot be found.  As stated above, the Court has accepted that Vasquez worked 60 hours per week.  To qualify for a spread-of-hours wage, the employee must work a shift that exceeds ten hours.  12 N.Y.C.R.R. § 142-2.4(a).  Vasquez's claim to have worked over ten hours *every* day is untenable; that would have been impossible for any week she worked 60 hours.  Further, without more, the Court cannot conclude to a reasonable certainty that Vasquez worked over ten hours on *any* given day based on the evidence provided.  *See Kim*, 2021 WL 5315704, at *4.  Therefore, Vasquez is not entitled to spread-of-hours pay.

As noted above, Vasquez also alleges that Defendants verbally agreed to pay her a monthly commission "at a rate of 10% of all sales of every phone that [she] sold to customers," but failed to pay her commissions during her last five months of employment, from June to October 2021.  (Dkt. No. 31 Ex. G ¶¶ 8–11).[18]  Vasquez claims that Defendants' failure to pay her earned commissions violated NYLL § 191.  (Dkt. No. 1 ¶¶ 105–06).  To bring a Section 191(1)(c) claim for unpaid commissions, the plaintiff must establish that such commissions were "'earned . . . in accordance with the agreed terms of the employment.'"  *Zuckerman v. GW Acquisition LLC*, No. 20 Civ. 8742 (VEC), 2021 WL 4267815, at*15 (S.D.N.Y. Sept. 20, 2021) (quoting N.Y. Lab. Law § 191(1)(c)); *see also Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 289 (S.D.N.Y. 2016) ("Failure to establish a contractual right to wages necessarily precludes a statutory claim under New York's labor law.").

---

[18] In her first affidavit, Vasquez described her agreement more expansively as providing for a 10% commission on all sales of "every phone or phone accessory" that she sold.  (Dkt. No. 31 Ex. H ¶ 10).

Assuming that Vasquez's description of her oral agreement with Defendants establishes she had an enforceable contractual right to a 10% commission, Vasquez still has not provided a sufficient factual basis to determine the amount of her unpaid commissions. Vasquez states that she was paid a $430 commission her first month, and a $668 commission her second, after which Defendants failed to pay her any further commissions, despite her complaints. (Dkt. No. 31 Ex. G ¶¶ 9–10). She estimates, based on her "best recollection," that she earned commissions of $600 to $800 per month for her last five months of employment, and then uses an average of $700 per month to calculate total unpaid commissions of $3,500. (*Id.* ¶ 11). But Vasquez does not provide any information as to how much a phone generally cost or how many she sold in a week or month, rendering Vasquez's damages claim factually insufficient. *See Liu v. Millenium Motors Sports, LLC*, No. 17 Civ. 06438 (RPK) (RER), 2021 WL 4268136 (E.D.N.Y. May 24, 2021) (denying an award of unpaid commissions because plaintiffs "fail[ed] to provide factual information, such as the number of [products] sold and the average price, to support their claims"), *R&R adopted,* 2021 WL 3463193 (E.D.N.Y. Aug. 6, 2021).

Further, Vasquez's average of $700 in unpaid commissions for the last five months of her employment substantially exceeds—by more than 25%—the average of approximately $549 in commissions she was paid during her first two months.[19] Such an increase is seemingly at odds with her statement that when she complained to Abramov about the unpaid commissions, he "always replied the store

---

[19] $430 + $668 = $1,098 ÷ 2 = $549

was slow." (Dkt. No. 31 Ex. G ¶ 10). Vasquez provides no explanation for how she was able to earn commissions at a rate above her prior track record at a time when the store's sales apparently were falling. Given this discrepancy and the absence of any additional supporting proof in the record, the Court cannot reasonably infer that Vasquez earned an average of $700 in unpaid commissions for five months, as she claims. Therefore, the Court respectfully recommends denying Vasquez's request for an award of unpaid commission.

At the same time, the Court will not use the $430 and $668 monthly commissions Vasquez was paid during her first two months of employment as an offset against her unpaid wages. These amounts were paid monthly and, thus, the Court has no basis for knowing how much commission Vasquez earned on a weekly basis. *See Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 281 (E.D.N.Y. 2024) (declining to consider paid commissions for purposes of assessing defendants' minimum wage liability because plaintiff "does not provide any estimate as to how much she earned in commissions each week"); *Holguin v. Quality Furniture NY LLC*, No. 23 Civ. 0004 (AT) (RFT), 2024 WL 4954048, at *9, *11 (S.D.N.Y. Nov. 8, 2024) (same).

The Court thus recommends that Vasquez be awarded a total of $8,370 in unpaid minimum and overtime wages.

## B. Liquidated Damages

In his Opinion & Order, Judge Liman awarded Plaintiffs liquidated damages under the NYLL "in the amount of one hundred percent of their respective back

wages—including minimum wage, overtime, and spread-of-hours pay." *Castillo*, 2023 WL 6664552, at *5. Thus, the Court recommends that Castillo be awarded $1,890 in liquidated damages; that Herrera be awarded $3,215 in liquidated damages; and that Vasquez be awarded $8,370 in liquidated damages.

## C. Wage Statements and Notices

Plaintiffs seek statutory damages under NYLL § 195. (*See* Dkt. No. 30 at 16–17). Section 195 of the Labor Law, adopted as part of New York's Wage Theft Prevention Act, 2010 N.Y. Sess. Laws 1446-58 ("WTPA"), requires an employer to provide an employee, at the time of hiring, with a notice describing, *inter alia*, the employee's regular hourly rate and overtime rate of pay (if the employee is not exempt from overtime compensation). N.Y. Lab. Law § 195(1). In addition, each time wages are paid, the employer must furnish the employee with a statement detailing the calculation of regular and overtime pay for that pay period, along with information on deductions and minimum wage allowances. *Id.* § 195(3).

Following Judge Liman's Opinion & Order determining liability under these wage notice and wage statements provisions, *see Castillo*, 2023 WL 6664552, at *4, and Plaintiffs' filing of their renewed motion for default judgment (Dkt. Nos. 29–32), the Second Circuit, on August 30, 2024, issued its ruling in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024). In *Guthrie*, the Second Circuit held that to establish Article III standing to pursue claims under Section 195 in federal court, "a plaintiff cannot rely on 'technical violations' of the Labor Law but must allege 'actual injuries suffered as a result of the alleged . . . wage notice and wage

statement violations.'" *Id.* at 305 (citation omitted).  In other words, the plaintiff "must show some causal connection between the lack of accurate notices and the downstream harm" that the statute seeks to prevent.  *Id.* at 308.  Unless the plaintiff can do so, by showing that he or she "plausibly would have avoided some actual harm or obtained some actual benefit" if accurate notices had been provided, "the plaintiff has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195."  *Id.*

The Second Circuit recognized in *Guthrie* that "the failure of an employer to provide the wage notices and wage statements that § 195 requires may result in various harms to an employee."  *Id.* at 310.  For example, a plaintiff may have suffered an injury-in-fact sufficient to establish standing when "inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion."  *Id.* at 309; *see also id.* at 310 (noting that "a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages" has a concrete interest for standing purposes).  But the employee "cannot . . . rely on 'speculation and conjecture'" to establish the required downstream harm.  *Id.* at 309 (quoting *Quieju v. La Jugueria Inc.*, No. 23 Civ. 264, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)).  "Rather, the plaintiff-employee must support a plausible 'theory as to *how* he was injured by [the] defendants' failure to provide the required documents."  *Id.* (quoting *Quieju*, 2023 WL 3073518, at *2) (emphasis in original).

All three Plaintiffs allege similar harms from Defendants' violations of Section 195, including that they did not know whether they were being paid

correctly because they did not have wage statements to determine how their wages were being calculated (Dkt. No. 43 Exs. 1 ¶ 8; 2 ¶¶ 7, 9–11; 3 ¶¶ 10–11); that they were not aware of their rights as employees or what they were to be paid because they did not receive wage notices at hiring (*id.* Exs. 1 ¶ 4; 2 ¶ 4; 3 ¶ 4, 6); and that they suffered a loss of wages because they did not know that they were being underpaid (*id.* Exs. 1 ¶ 8–12; 2 ¶ 8; 3 ¶¶ 6, 11–12). When Plaintiffs questioned Abramov about their wages, he responded that he would "look into it," but he never did. (*Id.* Exs. 1 ¶ 7; 2 ¶ 8; 3 ¶ 9). Without the required notices and statements, Plaintiffs thus lacked the knowledge necessary to correct their underpayment or advocate for their rights.

Based on their affidavits, Plaintiffs have sufficiently shown that they suffered downstream harm, including the loss of wages due to Defendants' violations of the WTPA. *See Guthrie*, 113 F.4th at 309-10; *Ortega*, 2024 WL 4751732, at *9 (awarding damages under the WTPA after plaintiffs sufficiently established standing by alleging that "Defendants' failure to provide them with any wage statements or wage notices 'served to keep [them] uninformed so that [they] did not have proper information to contest the lack of proper wages'"); *Charles v. Pinnacle Too, LLC*, No. 22 Civ. 4232 (DEH) (JW), 2024 WL 4491560, at *16 (S.D.N.Y. Oct. 15, 2024 ("The specific harm suffered here is the inability to decipher the extent of amounts owed and, thus, the inability to proceed to recover those amounts owed. . . . [T]his is exactly the type of concrete harm *Guthrie* recognized was sufficient to establish standing[.]") (citing *Guthrie*, 113 F.4th at 311 n.4); *Castillo v. Hollis*

22

*Delicatessen Corp.*, No. 22 Civ. 5476 (AMD) (PK), 2024 WL 4107258, at *1 n.1 (E.D.N.Y. Sept. 6, 2024) ("[T]he plaintiff has standing for her wage notice and wage statement violations because the plaintiff has shown a causal connection between the lack of accurate notices from the defendants and downstream harm. The plaintiff alleges that the defendants 'were able to hide their violations of wage and hour laws and take advantage of Plaintiff's relative lack of sophistication by failing to provide her with wage information.'"). Therefore, Plaintiffs are entitled to the allotted statutory damages.

The WTPA allows plaintiff-employees to recover up to $5,000 in statutory damages for violations of the wage notice requirements, *see* N.Y. Lab. Law § 198(1-b), and up to $5,000 for violations of the wage statement requirements, *see id.* § 198 (1-d). Wage notice damages begin to accrue if the requisite notice is not provided "within ten business days" of the first day of employment at the rate of "fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of" $5,000. *Id.* § 198(1-b). If an employer fails to "furnish each employee with a statement with every payment of wages," *id.* § 195(3), damages are calculated at a rate of $250 "for each work day that the violations occurred or continue to occur, but not to exceed a total of" $5,000. *Id.* § 198(1-d).

### 1. Castillo

Castillo began his employment with Defendants on March 1, 2021. (Dkt. No. 31 Ex. C ¶ 3). The last day for Defendants to have provided Castillo with proper wage notices under Section 195 was March 11, the tenth business day from when he

began working.[20]  Thus, Castillo is entitled to $50 per workday for each of the 14 days he worked after March 11 until his employment was terminated.  This results in $700 in damages for violations of the wage notice provision.[21]

Castillo states that he was paid every Monday.  (*Id.* ¶ 6).  Thus, the first violation of the wage statement requirement occurred on Monday, March 8, 2021, and Castillo accrued $250 each day for the 18 days he worked after that, for a total of $4,500 in damages.[22]

The Court recommends an award of $5,200 in statutory damages to Castillo for violations of the WTPA.

### 2.  Herrera

Herrera began his employment on August 10, 2021.  (Dkt. No. 31 Ex. E ¶ 3).  The last day for Defendants to have provided Herrera with the requisite wage notice was August 20, 2021.  Thus, Herrera should be awarded $2,100 for violations of the wage notice provision for the 42 days he worked after that date.[23]

Herrera was also paid every Monday without a wage statement, with the first violation occurring on August 16, 2021, and the violations continuing until his last day on October 8, 2021.  (*Id.* ¶ 10).  Herrera should be awarded the $5,000 maximum in statutory damages for violations of the wage statement provision.[24]

---

[20] This analysis assumes that "business days" include the days Defendants' stores were open for business.  Based on Plaintiffs' workdays, the stores were open for business seven days a week.

[21] 14 days x $50 per day = $700

[22] 18 days x $250 = $4,500

[23] 42 days x $50 per day = $2,100

[24] 47 days x $250 per day = $11,750

The Court recommends that Herrera be awarded a total of $7,100 in statutory damages under the WTPA.

### 3. Vasquez

Vasquez began her employment on March 23, 2021. (Dkt. No. 31 Ex. G ¶ 3). The last day for Defendants to provide her with the requisite wage notices was April 2, 2021. Vasquez's employment continued for more than six months, until October 27, 2021. Thus, Vasquez should be awarded $5,000 in statutory damages for violations of the wage notice provisions.[25]

Vasquez is also entitled to the maximum statutory award for violations of the wage statement provision as the maximum is reached after 20 days of violations and Vasquez worked for Defendants for several months.

Therefore, the Court recommends Vasquez be awarded $10,000 in statutory damages under the WTPA.

### D. NYSHRL and NYCHRL Violations

Judge Liman also granted default judgment on Castillo's NYSHRL and NYCHRL discrimination claims against Defendant Abramov and the Entity Defendants (but not against Isakov). *Castillo*, 2023 WL 6664552, at *5–7. As stated above, Castillo has withdrawn his claim for back pay. Thus, the Court considers only Castillo's claims for emotional distress and punitive damages.

---

[25] When a violation of the wage notice requirement surpasses 100 days, as is the case with Vasquez who worked from March 23 to October 27, 2021, then the employee is entitled to the maximum damages as 100 days x $50 = $5,000.

### a. Emotional Distress Damages

Castillo seeks $25,000 in emotional distress damages.  "In considering emotional distress damages, 'courts should consider the duration, severity, consequences, and physical manifestations of mental anguish.'" *Aponte v. Clinton St. Pizza Inc.*, No. 22 Civ. 3188 (DEH), 2024 WL 3796806, at *9 (S.D.N.Y. July 19, 2024) (quoting *Graham v. Prizm Associates, Inc.*, No. 20 Civ. 461 (CS) (PED), 2022 WL 20403411, at *6 (S.D.N.Y. Jan. 10, 2022)), *R&R adopted,* 2024 WL 3794335 (S.D.N.Y. Aug. 13, 2024).  "[C]ourts in the Second Circuit have routinely identified three categories of damages for emotional distress: (1) garden variety; (2) significant; and (3) egregious."  *Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 F. App'x 536, 546 (2d Cir. 2020).  "Claims for 'garden-variety' emotional distress damages 'typically lack extraordinary circumstances and are not supported by medical testimony.'" *Gavel v. Korang*, No. 20 Civ. 3475 (LJL) (VF), 2024 WL 4203732, at *6 (S.D.N.Y. Aug. 28, 2024) (quoting *Sooroojballie*, 816 F. App'x at 546), *R&R adopted*, 2024 WL 4203248 (S.D.N.Y. Sept. 16, 2024).  As the Second Circuit has explained:

> In garden-variety claims, the evidence of emotional harm is limited to plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury. . . . Significant emotional distress claims are based on more substantial harm or offensive conduct and may be supported by medical testimony, evidence of treatment by a healthcare professional, and testimony from other witnesses. Egregious emotional distress claims yield the highest awards and are warranted only where the employer's conduct was outrageous and shocking or affected the physical health of the plaintiff.

*Sooroojballie*, 816 F. App'x at 546 (quoting *Maher v. All. Mortg. Banking Corp.*, No. 06 Civ. 5073 (DRH) (ARL), 2010 WL 3516153, at *2 (E.D.N.Y. Aug. 9, 2010), *R&R adopted,* 2010 WL 3521921 (E.D.N.Y. Sept. 1, 2010)).

Here, Castillo should be awarded garden-variety emotional distress damages. Castillo's emotional distress claims are supported by two affidavits, neither of which alleges "extraordinary circumstances" that would warrant classifying Castillo's emotional distress as significant or egregious.  (Dkt. No. 31 Ex. C & Ex. D).  Castillo states that as a result of being subjected to discrimination for the month that he worked with Abramov, he "suffered extreme mental anguish, outrage, severe anxiety . . ., painful embarrassment among [his] friends and co-workers, disruption of [his] personal life[,] and loss of enjoyment . . . ."  (Dkt. No. 31 Ex. D ¶ 20).  He also asserts that he turned down three job offers following his termination because he "felt scared" that he would be further discriminated against and that fear "kept [him] from accepting" the subsequent offers.  (Dkt. No. 31 Ex. C ¶ 9).  It took Castillo over three months to finally feel ready to work again, beginning his new employment on July 11, 2021.  (*Id.* ¶ 10).  Castillo has not sought medical treatment or provided any corroborating evidence or medical testimony in support of his claim.[26]

Based on the evidence provided, Castillo is entitled to garden-variety emotional distress damages.  *See Williams v. Firequench, Inc.*, No. 21 Civ 4112

---

[26] Castillo states that he intends to go to therapy in the future, but that cost has been a barrier to doing so thus far.  (Dkt. No. 31 Ex. C ¶ 12).  While the Court is sympathetic to that circumstance, it does not, in and of itself, justify a higher category of emotional distress damages.

(PAE) (JLC), 2022 WL 3571752, at *8 (S.D.N.Y. Aug. 19, 2022) (finding plaintiff's allegations that she "suffered from depression, anxiousness, and sleeping issues" and fear of repeat discrimination "sufficient to claim garden variety emotional distress damages" "without medical evidence or corroboration"); *Aponte*, 2024 WL 3796806, at *10 (rejecting plaintiffs' argument that "they should be awarded 'significant damages'" and awarding garden variety damages instead because plaintiffs failed to provide corroborating evidence and did not seek medical treatment); *Yu*, 2023 WL 8438669, at *6 (awarding garden-variety emotional distress damages where plaintiff did not seek medical treatment but sufficiently alleged the discriminatory conduct she suffered that led to her firing caused her to lose standing with her mother-in-law, fight with her husband, and lose sleep); *Munson v. Diamond*, No. 15 Civ. 425 (DAB) (BCM), 2017 WL 4863096, at *8 (S.D.N.Y. June 1, 2017) (awarding garden-variety emotional distress damages because plaintiff failed to provide medical records or corroborating evidence and was employed "for less than two months"), *R&R adopted,* 2017 WL 4862789 (S.D.N.Y. Oct. 26, 2017).

In this District, "[d]amages for garden-variety claims generally range from $5,000 to $30,000." *Aponte*, 2024 WL 3796806, at *9 (citing *Yu*, 2023 WL 8438669, at *6 (S.D.N.Y. Oct. 5, 2023)); *see also Gavel*, 2024 WL 4203732, at *6 ("Garden variety emotional distress claims 'generally merit $5,000 to $35,000 awards.'") (quoting *Najnin v. Dollar Mountain, Inc.*, No. 14 Civ. 5758, 2015 WL 6125436, at *3

28

(S.D.N.Y. Sept. 25, 2015)).[27]  Castillo requests $25,000, which is on the higher end of the general range.  However, his request for damages is unopposed and sits comfortably within the standard range awarded in this Circuit.  *See, e.g.*, *Santiago v. Crown Heights Ctr. for Nursing & Rehab.*, No. 15 Civ. 4381 (DLI) (CLP), 2017 WL 9482107, at *23 (E.D.N.Y. Feb. 24, 2017) ("Since defendants have defaulted and chosen not to challenge plaintiff's assertion of these damages, the Court respectfully recommends an award of $30,000 in emotional distress damages under Title VII, Section 1981, the NYSHRL, and the NYCHRL."), *R&R adopted as modified,* 2017 WL 4410807 (E.D.N.Y. Sept. 30, 2017); *Aponte*, 2024 WL 3796806, at *10 (awarding $20,000 to a plaintiff who was discriminated against by an employer for two years due to his sexual orientation); *Yu*, 2023 WL 8438669, at *6 (recommending $25,000 in garden-variety damages to plaintiff who obtained default judgment on age-discrimination claim and who, following her termination, lost sleep and fought with her husband because she no longer had a job, but did not seek medical or psychiatric treatment); *Chen v. Shanghai Cafe Deluxe, Inc.*, No. 17 Civ. 2536 (VF), 2023 WL 2625791, at *8 (S.D.N.Y. Mar. 24, 2023) (awarding $25,000 to plaintiff

---

[27] Some cases state that the usual range for garden-variety emotional distress claims is $30,000 to $125,000.  *See, e.g.*, *Lewis v. Am. Sugar Ref., Inc.*, 325 F. Supp. 3d 321, 364 (S.D.N.Y. 2018). However, the Second Circuit has stated that awards for "'significant' emotional distress claims . . . usually range from $50,000 to $200,000," *Sooroojballie*, 816 Fed. App'x at 547, which makes the range of $5,000 to $30,000 more appropriate for garden-variety claims based on limited evidence and conclusory statements, as is the case here.  Further, many cases award garden-variety damages below $30,000.  *See Aponte*, 2024 WL 3796806, at *1, 10–11 (awarding $20,000 in garden-variety damages); *Gavel*, 2024 WL 4203732, at *6 (awarding $10,000 in garden-variety damages); *Yu*, 2023 WL 8438669, at *6 (awarding $25,000 in garden-variety damages); *Munson*, 2017 WL 4863096, at *8 (awarding $15,000 in garden-variety damages).

who experienced insomnia, stress, and shame after her employment was terminated due to age but provided no medical testimony or documentation).

The Court thus recommends an award of $25,000 in garden-variety emotional distress damages to Castillo.

### b.  Punitive Damages Under the NYCHRL

Castillo also seeks $125,000 in punitive damages pursuant to the NYCHRL. (Dkt. No. 30 at 22).  "Punitive damages are a discretionary moral judgment that the defendant has engaged in conduct that is so reprehensible that it warrants punishment." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 115 (2d Cir. 2015) (cleaned up). "'Punitive damages are intended not only to punish the tortfeasor but also to deter future reprehensible conduct.'" *Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2019 WL 1450449, at *14 (S.D.N.Y. Mar. 31, 2019) (quoting *Chauca v. Abraham*, 30 N.Y.3d 325, 331 (2017)).

As Judge Liman noted, punitive damages are available only under the NYCHRL, not under the NYSHRL. *Castillo*, 2023 WL 6664552, at *8 n.3; *see* N.Y.C. Admin. Code § 8-502(a).  "[T]he standard for determining damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" *Garcia v. Comprehensive Ctr., LLC*, No. 17 Civ. 8970 (JPO) (BCM), 2019 WL 8274296, at *9 (S.D.N.Y. Nov. 21, 2019) (quoting *Chauca v. Abraham*, 885 F.3d 122, 124 (2d Cir. 2018)) (cleaned up), *R&R adopted,* 2020 WL 1435002 (S.D.N.Y. Mar. 24, 2020).  "This standard

requires a lower degree of culpability than is required for punitive damages under other statutes, as it requires neither a showing of malice nor awareness of the violation of a protected right." *Villalta v. JS Barkats, P.L.L.C.*, No. 16 Civ. 2772 (RA) (RWL), 2021 WL 2458699, at *17 (S.D.N.Y. Apr. 16, 2021) (quoting *Chauca*, 30 N.Y.3d at 334 (cleaned up)), *R&R adopted,* 2021 WL 2458023 (S.D.N.Y. June 16, 2021). All that is required under this liberal standard is a showing that the defendant's discriminatory actions were willful or wanton, or that the defendant consciously or recklessly disregarded the plaintiff's rights. *See Williams*, 2022 WL 3571752, at *9.[28]

NYCHRL does not set a limit on the amount of punitive damages that may be awarded. *Villalta*, 2021 WL 2458699, at *17 (citing *Ravina*, 2019 WL 1450449, at *14). "Under New York law, whether to award punitive damages and how much to award are primarily questions which reside in the sound discretion of the original trier of the facts, subject to constitutional limits." *Garcia*, 2019 WL 8274296, at *9 (citations omitted). While no mathematical formula exists for calculating punitive damages, the U.S. Supreme Court "ha[s] determined that 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process, . . . [and] [w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.'" *Exxon Shipping Co. v.*

---

[28] "Employers exposed to a punitive damages charge can mitigate punitive damages based on vicarious liability where they can prove the existence of certain policies established to deter discrimination." *Chauca*, 30 N.Y.3d at 330. No such proof was presented by Defendants or is before the Court here.

*Baker*, 554 U.S. 471, 501 (2008) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)).  "To determine a punitive damages award, courts are guided by three factors: '(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases.'"  *Gavel*, 2024 WL 4203732, at *7 (quoting *Patterson v. Balsamico*, 440 F.3d 104, 120 (2d Cir. 2006)) (internal citations omitted).

The first factor, degree of "reprehensibility of the tortious conduct[,] is 'perhaps the most important' factor in determining an award of punitive damages.'"  *Gavel*, 2024 WL 4203732, at *7 (quoting *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 575 (1996)).  In considering this factor, the Supreme Court has instructed courts to assess whether: "[a] the harm caused was physical as opposed to economic;  [b] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [c] the target of the conduct had financial vulnerability; [d] the conduct involved repeated actions or was an isolated incident; and [e] the harm was the result of intentional malice, trickery, or deceit, or mere accident."  *State Farm*, 538 U.S. at 419.

Abramov's treatment of Castillo warrants punitive damages.  While there is no alleged physical conduct or violence, Castillo was subjected to a month of repeated discriminatory taunts due to his sexual orientation in violation of his rights under the NYCHRL.  (Dkt. No. 31 Ex. D ¶¶ 15–17).  These derogatory remarks were made directly to Castillo and in front of his coworkers, evincing

intentional malice and not mere accident.  In addition, because of his sexual orientation, Abramov refused to work with Castillo, accused him of being a thief, and ultimately terminated his employment.  (*Id.* ¶¶ 14, 16, 21).  Castillo does not directly allege financial vulnerability, but the fact that he was working an average of 65 hours per week and accepting $780 as payment bespeaks a degree of financial vulnerability.  Abramov's discriminatory actions also affected Castillo's mental well-being and impaired his ability to work for over three months due to fear of continued discrimination.  (Dkt. No. 31, Ex. C ¶ 9).  The Court finds that Abramov's discriminatory conduct was willful and wanton.  It was not an isolated incident, but a pattern that lasted throughout Castillo's employment.  This pattern of deliberate discrimination was such that "any 'reasonable employer' would have known that he was violating [Castillo's] legal rights[.]"  *Villalta*, 2021 WL 2458699, at *18; *see Angulo v. 36th St. Hosp. LLC*, No. 19 Civ. 5075 (GBD) (SLC), 2020 WL 4938188, at *14 (S.D.N.Y. July 31, 2020), *R&R adopted,* 2020 WL 4936961 (S.D.N.Y. Aug. 24, 2020).

Factors two and three pertain to the award itself.  Castillo seeks an award of $125,000 in punitive damages.  (Dkt. No. 30 at 22).  That is a 5:1 ratio of punitive damages to compensatory damages and would be excessive in light of the facts of this case.  *State Farm*, 538 U.S. at 425 ("[A]n award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety."); *see Ravina*, 2019 WL 1450449, at *14.  In addition, cases awarding damages within the range requested by Castillo often involve physical harm, such

as violence and unwanted sexual contact, which are not factors present here. *See Angulo*, 2020 WL 4938188, at *15 (awarding $100,000 where defendant repeatedly sexually assaulted plaintiff resulting in her need for ongoing mental health treatment due to trauma); *Garcia*, 2019 WL 8274296, at *9 (awarding $75,000 in punitive damages after plaintiff endured physical violence, harassment, and discrimination at the hands of her employer for more than a year); *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378 (RJS), 2011 WL 4549412, at *5–6 (S.D.N.Y. Sept. 27, 2011) (awarding $75,000 to plaintiff who endured sexual harassment and unwanted sexual contact from her supervisor). As a final factor, courts must also consider the financial circumstances of defendants when determining an award of punitive damages, but "it is well established that [the defendant] has the 'burden to show that his financial circumstances warrant a limitation of the award.'" *Gavel*, 2024 WL 4203732, at *8 (quoting *Patterson v. Balsamico*, 440 F.3d 104, 121–22 (2d Cir. 2006)). Here, Abramov and the Entity Defendants have "provided no information related to [] financial status," having defaulted. *Id.* at *7.

Upon consideration of all the foregoing factors and in reviewing comparable cases, the Court recommends an award of $15,000 in punitive damages to Castillo. *See Cooper v. Upstairs, Downstairs of New York, Inc.*, No. 18 Civ. 6426 (SHS), 2021 WL 1172477, at *1 (S.D.N.Y. Mar. 29, 2021) (affirming jury award of $6,500 in punitive damages to plaintiff who was subjected to discrimination in the workplace due to his perceived sexual orientation), *aff'd,* 2024 WL 1904575 (2d Cir. May 1,

2024); *Sachs v. Nunziante*, No. 15 Civ. 1825 (JFB) (AKT), 2016 WL 4506731, at *8–9 (E.D.N.Y. July 21, 2016) (awarding $3,000 in punitive damages under the Fair Housing Act to plaintiff who was subjected to religious discrimination and violent threats for at least a two-week period), *R&R adopted,* 2016 WL 4508339 (E.D.N.Y. Aug. 24, 2016); *Greathouse v. JHS Sec. Inc.*, No. 11 Civ. 7845 (PAE), 2015 WL 7142850, at *9 (S.D.N.Y. Nov. 13, 2015) (awarding $10,000 in punitive damages where plaintiff was threatened with a gun and suffered ongoing anxiety that interfered with his ability to work), *R&R adopted,* 2016 WL 4523855 (S.D.N.Y. Aug. 29, 2016); *Diggs v. Oscar De La Renta, LLC*, 169 A.D.3d 1003, 94 N.Y.S.3d 574, 576 (2d Dept. 2019) (awarding $28,500 in punitive damages to plaintiff subjected to racial discrimination by her employer in violation of the NYSHRL and NYCHRL for eight days).

### E.    Pre-Judgment Interest

Plaintiffs seek pre-judgment interest on their unpaid wages at 9%. (Dkt. No. 30 at 13–15). Pre-judgment interest is available for unpaid wages under NYLL § 198(1-a) and "is still appropriate where a plaintiff is awarded liquidated damages under NYLL." *Ortega*, 2024 WL 4751732, at *11 (citation omitted); *see Aponte*, 2024 WL 3796806 at *7; N.Y. Lab. Law § 198 ("In any action instituted in the courts upon a wage claim by an employee . . . the court shall allow such employee to recover . . . prejudgment interest as required under the civil practice laws and rules.").

New York's pre-judgment interest rate is set at 9% per year. N.Y. C.P.L.R. § 5004. "Where [] damages were incurred at various times, interest shall be

computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Plaintiffs incurred damages each week they did not receive proper compensation. In these situations, "courts often calculate prejudgment interest from the midpoint of the plaintiff's employment." *Aponte*, 2024 WL 3796806, at \*7 (citing *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (collecting cases)); *see Feng v. Kelai Corp.*, 727 F. Supp. 3d 423, 456 (S.D.N.Y. 2024) ("Where, as here, multiple periods of employment are involved with different rates of pay, courts 'often choose the midpoint of the plaintiff's employment within the limitations period.'") (quoting *Junmin Shen v. Number One Fresco Tortillas, Inc.*, No. 16 Civ. 2015 (RWL), 2018 WL 6712771, at \*14 (S.D.N.Y. Nov. 26, 2018)); *see also* Dkt. No. 30 at 14. Accordingly, Plaintiffs should be awarded pre-judgment interest on unpaid minimum and overtime wages at the statutory rate of 9% per year from the midpoint of their employment until judgment.

Castillo's employment period was from March 1 to March 27, 2021. (Dkt. No. 31 Ex. C ¶¶ 3–4). The midpoint of this period is March 14, 2021. (*See* Dkt. No. 30 at 14). The Court recommends that pre-judgment interest be awarded to Castillo at a daily rate of $0.47 from March 14, 2021 through the date of judgment.[29]

Herrera's employment period was from August 10 to October 8, 2021. (Dkt. No. 31 Ex. E ¶¶ 3, 5). The midpoint of this period is approximately September 9, 2021. (Dkt. No. 30 at 15). The Court recommends that pre-judgment interest be

---

[29] $1,890 in unpaid wages x .09 interest rate = $170.10 / 365 days per year = $0.47 per day

awarded to Herrera at a daily rate of $0.79 from September 9, 2021 through the date of judgment.[30]

Vasquez's employment period was from March 23 to October 27, 2021. (Dkt. No. 31 Ex. G ¶¶ 3–4). The midpoint of this period is approximately July 10, 2021. (Dkt. No. 31 at 15). The Court recommends that pre-judgment interest be awarded to Vasquez at a daily rate of $2.06 from July 10, 2021 through the date of judgment.[31]

## F.    Post-Judgment Interest

Plaintiff also seeks post-judgment interest. (Dkt. No. 30 at 23). Post-judgment interest is governed by federal law, which provides that post-judgment interest "be allowed on any money judgment in a civil case recovered in a district court [and] calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). The Second Circuit has made clear that "an award of post-judgment interest is mandatory." *Ortega*, 2024 WL 4751732, at *12 (citing *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008)); *see Gavel*, 2024 WL 4203732, at *9 ("[A] plaintiff is 'entitled to post-judgment interest on all money awards as a matter of right.' Further, under 28 U.S.C. § 1961(a), an award of post-judgment interest is 'mandatory in any civil case where money

---

[30] $3,215 in unpaid wages x .09 interest rate = $289.35 / 365 days per year = $0.79 per day

[31] $8,370 in unpaid wages x .09 interest rate = $753.30 / 365 days per year = $2.06 per day

damages are recovered.'") (citations omitted). "Given the mandatory nature of post-judgment interest, the Court respectfully recommends awarding Plaintiffs post-judgment interest in an amount consistent with 28 U.S.C. § 1961." *Ortega*, 2024 WL 4751732, at *12.

## G.    Attorney's Fees & Costs

Plaintiffs request attorney's fees of $12,250 and reimbursement of $833 in costs. (Dkt. No. 31 at 4, Ex. I). Both "[t]he FLSA and NYLL provide an award of reasonable attorneys' fees and costs to a prevailing plaintiff in a wage-and-hour action such as this one." *Feng*, 727 F. Supp. 3d at 456; *see* 20 U.S.C. § 216(b) (allowing "a reasonable attorney's fee to be paid by the defendant, and costs of the action" where plaintiff prevails); N.Y. Lab. Law §§ 198(1-a), 663(1) (allowing for the recovery of costs and "all reasonable attorney's fees" where an employee prevails on a wage claim). Plaintiffs are the prevailing parties in this action and, as such, are entitled to recover reasonable attorney's fees.

Courts in this district typically calculate reasonable attorney's fees under the NYLL and FLSA by applying the lodestar method. *See, e.g.*, *Ortega*, 2024 WL 4751732, at *12; *Feng*, 727 F. Supp. 3d at 457; *Zhang*, 2024 WL 1159002, at *18. "This approach calculates attorney's fees by multiplying the attorney's usual hourly rate by the number of hours billed, to produce a figure known as the lodestar." *Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019). "Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)

(quoting *Abor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  To calculate the lodestar amount, "[a] plaintiff must document the application [for fees and costs] with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done*." Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *19 (S.D.N.Y. Sept. 8, 2016) (cleaned up), *R&R adopted,* 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).  Plaintiffs' counsel has submitted a Declaration (Dkt. No. 31) and a chart of time entries (*id.* Ex. I) in support of his request for attorney's fees.

### 1.  Hourly Rate

Plaintiffs were represented by Mohammed Gangat ("Gangat") of the Law Office of Mohammed Gangat.  (Dkt. No. 31 ¶ 1).  Gangat seeks a fee of $350 per hour for 35 hours totaling $12,250, which he asserts is "reasonable, in accord with the prevailing rates in this community, and necessary to the prosecution." (*Id.* ¶ 12).  "To determine whether an hourly rate is reasonable, the Second Circuit has instructed district courts to 'apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill.'" *Ortega*, 2024 WL 4751732, at *12 (quoting *Victor v. Sam's Deli Grocery Corp.*, No. 19 Civ. 2965 (SLC), 2022 WL 3656312, at *14 (S.D.N.Y. Aug. 25, 2022)).  "A court may also rely on its own knowledge of local comparable rates." *Xochimitl*, 2016 WL 4704917, at *19.

"In this district, courts generally award experienced wage-and-hour attorneys between $300.00 and $400.00 per hour." *Ortega*, 2024 WL 4751732, at *12; *see*

*Pinzon v. 467 Star Deli Inc.*, No. 22 Civ. 6864 (JGK) (SLC), 2023 WL 5337617, at *14 (S.D.N.Y. July 31, 2023), *R&R adopted*, 2023 WL 5334757 (S.D.N.Y. Aug. 18, 2023); *Burns*, 635 F. Supp. 3d at 284; *Victor*, 2022 WL 3656312, at *14; *Surdu v. Madison Global, LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases) ("Courts of this Circuit commonly allow for hourly rates of $300 to $400 for experienced attorneys or partners in FLSA and NYLL wage-and-hour cases."); *Greathouse v. JHS Sec. Inc.*, No. 11 Civ. 7845, at *4 (PAE) (GWG), 2017 WL 4174811 (S.D.N.Y. Sept. 20, 2017) (noting that case law in this district "commonly reflects approvals of hourly rates of between $300 and $400 for partners in FLSA cases"), *aff'd*, 735 F. App'x 25 (2d Cir. 2018).

Gangat obtained his law degree in 2009 and has been practicing law in New York City for twelve years. (Dkt. No. 31 ¶ 14). Gangat affirms that he has "extensive experience litigating unpaid wage actions" in state and federal court and that his rate is in line with those "charged by other attorneys with similar qualifications and levels of experience. . . ."[32] (*Id.*) The Court finds Gangat's requested hourly rate of $350 to be consistent with the rates of attorneys with comparable experience and skill in this District and therefore reasonable. *See Ortega*, 2024 WL 4751732, at *13 (finding that an hourly rate of $400 was reasonable for an attorney who graduated in 2008 and had "over a dozen years of experience litigating wage-and-hour actions"); *Victor*, 2022 WL 3656312, at *15

---

[32] A search on Westlaw indicates that Gangat has been the attorney of record for around 160 federal labor and employment actions in New York.

(finding an hourly rate of $350 to be reasonable for an attorney with seven years of employment litigation experience); *Greathouse*, 2017 WL 4174811, at *4 (finding an hourly rate of $360 was reasonable for an attorney with thirteen years of experience in employment law).

### 2. Number of Hours

Gangat has been involved with this action since September 2021 and has expended 35 hours representing Plaintiffs. (Dkt. No 31 ¶ 13 & Ex. I). "In assessing whether the number of hours billed by the attorney is reasonable, courts consider 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Chen*, 2023 WL 2625791, at *10 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)) (citation omitted). "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Feng*, 727 F. Supp. 3d at 460 (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)) (cleaned up). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Chen*, 2023 WL 2625791, at *10 (citation omitted).

The Court has examined Gangat's declaration and time entries, which include the dates of work, the hours dedicated to each task, and a general

description of those tasks at each entry.  (Dkt. No. 31 Ex. I).  The Court finds the hours expended by Gangat to be reasonable and not "excessive, redundant, or otherwise unnecessary[.]"  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The Court thus recommends that Gangat be awarded $12,250 in attorney's fees.

### 3.  Costs

Prevailing plaintiffs are entitled to reasonable costs under both the FLSA and NYLL.  *See Feng*, 727 F. Supp. 3d at 456; 20 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663(1).  Plaintiffs seek $833 in costs consisting of a $402 filing fee and $431 process server fee.  (Dkt. No. 31 ¶ 15).  "Recoverable costs are 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  *Burns*, 635 F. Supp. 3d at 285 (quoting *Leblanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)) (cleaned up).  "'As with attorneys' fees, [a] requesting party must substantiate the request for costs.'"  *Sanchez v. Jyp Foods Inc.*, No. 16 Civ. 4472 (JLC), 2018 WL 4502008, at *17 (S.D.N.Y. Sept. 20, 2018) (citation omitted).

Plaintiffs' request for the $402 filing fee is properly substantiated.  The Court may "take judicial notice of the filing fee reflected on the docket."  *Pinzon*, 2023 WL 5337617, at *15 (citing *Inga v. Nesama Food Corp.*, No. 20 Civ. 0909 (ALC) (SLC), 2021 WL 3624666, at *15 (S.D.N.Y. July 30, 2021), *R&R adopted,* 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021)).  Here, the docket reflects payment of the $402 filing fee upon filing of the Complaint.  (S*ee* Docket Text at Dkt. Entry No. 1).

However, Plaintiffs have not properly supported their request for the $431 in process server costs as they have failed "'to submit invoices or receipts to substantiate the claimed amount[s].'" *Burns*, 635 F. Supp. 3d at 285 (quoting *Khotovitskaya v. Shimunov*, No. 18 Civ. 7303 (NGG) (CLP), 2021 WL 868781, at *2 (E.D.N.Y. Mar. 9. 2021)); *see Victor*, 2022 WL 3656312, at *16 (awarding costs for the $400 filing fee but denying service costs because counsel failed to substantiate the amount with invoices and receipts); *Sanchez*, 2018 WL 4502008, at *17 (awarding costs for the $400 filing fee but declining to award "costs for service of process, postage and photocopying, and translator services without supporting documentation"). Therefore, the Court recommends an award of $402 in costs.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that:

(1) Castillo be awarded:

    a. $1,890 in compensatory damages;

    b. $1,890 in liquidated damages;

    c. $5,200 in statutory damages;

    d. $25,000 in emotional distress damages;

    e. $15,000 in punitive damages;

    f. pre-judgment interest at the daily rate of $.047; and

    g. post-judgment interest at the statutory rate.

(2) Herrera be awarded:

    a. $3,215 in compensatory damages;

    b.  $3,215 in liquidated damages;

    c.  $7,100 in statutory damages;

    d.  pre-judgment interest at the daily rate of $.079; and

    e.  post-judgment interest at the statutory rate.

(3) Vasquez be awarded:

    a.  $8,370 in compensatory damages;

    b.  $8,370 in liquidated damages;

    c.  $10,000 in statutory damages;

    d.  pre-judgment interest at the daily rate of $2.06; and

    e.  post-judgment interest at the statutory rate.

(4) Plaintiffs be awarded $12,250 in attorney's fees.

(5) Plaintiffs be awarded $402 in costs.

DATED:    New York, New York
             December 27, 2024

                                     The Honorable Gary Stein
                                     United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from the date of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to the Honorable Lewis J. Liman. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner v. Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).